UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JANETTE KENNEDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-CV-0279-PPS-PRC |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| TANGELA BUSH, DONNA BLACK, | ) | |
| DONALD HARRIS, and ARTHUR | ) | |
| BACON | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

The U.S. Postal Service moves to exclude the proposed expert testimony of William P. Anthony, Ph.D, in this case brought against it under the Family and Medical Leave Act [DE 73]. For the reasons outlined below, I find that Dr. Anthony's testimony, at least in part, contains inadmissible legal conclusions and speculation. However, because Dr. Anthony may be able to give admissible testimony on whether the Postal Service provided appropriate training to employees which would be relevant to the issue of liquidated damages, I will permit further discovery regarding that particular area. The motion is therefore **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

Janette Kennedy worked for the Postal Service for nearly thirty years, most recently as a distribution clerk in the Hammond Post Office [DE 40 at ¶¶ 19-20]. Kennedy is a white female who was fifty-six when she was terminated in August 2009 [*Id.* at ¶¶ 13-14, 84]. Kennedy suffers from depression and migraines, and beginning in 2007, her health worsened and she missed work on a number of occasions [*Id.*, ¶¶ 25, 33-35]. In February 2008, Kennedy was

issued a Notice of Removal from her position, but after she filed a complaint with the EEOC, the removal was amended to a Last Chance Agreement [*Id.*, ¶¶ 35-36, 114-15].  Under the Agreement, Kennedy was only permitted a certain number of unscheduled absences and was required to retire as soon as she was eligible [*Id.*, ¶¶ 40-42, 44-46].  Kennedy missed parts of work on three days in the following months because of her health problems, and was also unable to get to work on another day because of a flood [*Id.*, ¶¶ 47, 51-52, 54, 62, 74].  USPS treated these absences as non-FMLA related leaves and issued Kennedy another Notice of Removal which ultimately led to her termination [*Id.*, ¶¶ 51-52, 77, 84].

The present motion deals with Kennedy's claims under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*.  Kennedy has alleged two FMLA claims: first, that her termination was in violation of the FMLA, and in retaliation for taking FMLA leave; and second, that the harassment, suspension, and termination were in retaliation for complaining about FMLA violations.  According to Kennedy's complaint, three of the absences for which she was terminated were due to her health problems and should not have been considered "unscheduled," and the fourth was because of a natural disaster that rendered many other employees unable to come to work that day, all of whom had their absence counted as "scheduled."

In support of her claims, Kennedy proposes the expert testimony of William P. Anthony, Ph.D., a professor of Business Administration at Florida State University [DE 74-1].  Dr. Anthony's proposed opinion, per his report, is that "the USPS violated their FMLA and absence policies and the federal guidelines in the application of FMLA in the manner in which it terminated Ms. Kennedy.  Ms. Kennedy was eligible for FMLA leave and she was not provided it as required by USPS policy and federal guidelines" [*Id.* at 3].  Dr. Anthony also opines that the

2

individual defendants lacked sufficient knowledge of FMLA policy and guidelines and failed to engage the appropriate USPS FMLA coordinator or other human resource employee in dealing with Kennedy [*Id*. at 5].

The Defendants have moved *in limine* to exclude the testimony of Dr. Anthony on the basis that the proposed testimony includes legal conclusions that are not an appropriate subject of expert testimony, and that, in any event, the proposed testimony would be confusing and prejudicial [DE 74 at 2].

## DISCUSSION

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 which was promulgated in the wake of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Here's what the rule says:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In applying the rule, I am required to determine whether the expert's testimony is both reliable and relevant. In doing so I must determine whether (1) the proposed witness would testify to valid scientific, technical or other specialized knowledge; and (2) whether his testimony will assist the trier of fact. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). The "reliability" factor requires a determination of "whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusions

is reliable," essentially making the determination a three-step inquiry: the witness must be qualified with the appropriate knowledge, skill, experience, training, or education; the reasoning or methodology underlying the testimony has to be scientifically reliable; and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. *Id.* (citation and internal quotations omitted); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901 (7th Cir. 2007) (using a three-step analysis). The focus "must be solely on principles and methodology, not on the conclusions they generate." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002).

Rule 702 and *Daubert* makes the district court the "gatekeeper" with respect to screening expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (citing *Daubert*, 509 U.S. at 589). Because experts come in all varieties, the *Daubert* framework is, by necessity, a flexible one that has to be adapted to cover the unique circumstances of each case and the type of testimony being offered. *Mihailovich v. Laatsch*, 359 F.3d 892, 919 (7th Cir. 2004). As the Supreme Court elaborated, the objective "is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.

**I.      Dr. Anthony's Legal Opinions**

The core of USPS's objections to Anthony's testimony is not a challenge to his qualifications but rather to his giving legal conclusions and interpretations of the law, which they say is not a proper subject for expert testimony because it is the province of the Court [DE 74 at 5-6]. Essentially, they argue that Dr. Anthony's proposed opinions that the USPS violated the

4

FMLA, the supporting federal regulations, and USPS's own guidelines are tantamount to legal opinions that are unhelpful to the trier of fact [*Id.*].

Generally speaking, "[w]itnesses testify about fact, not law. When a legal proposition is relevant to the jury's consideration, the proper procedure is for the judge to instruct the party on the proposition." *United States v. Johnson*, 223 F.3d 665, 671 (7th Cir. 2000) (citing *Bammerlin v. Navistar Int'l Trans. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994). Arguments about the meaning of legal documents or terms "belong[] in briefs, not in 'experts' reports.'" *RLJCS Enters., Inc. v. Prof. Ben. Trust Multiple Emp'r Welfare Benefit Plan & Trust*, 487 F.3d 494, 498 (7th Cir. 2007). That is why the law in this circuit is that ". . . expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003).

Although legal conclusions are impermissible, Federal Rule of Evidence 704(a) does state that "[a]n opinion is not objectionable just because it embraces an ultimate issue." But the advisory committee's notes caution that the rule must be read in conjunction with Rule 702, which requires that opinion testimony be helpful to the trier of fact, and Rule 403, which provides for the exclusion of evidence that wastes time, safeguarding "against the admission of opinions which would merely tell the [trier of fact] what result to reach . . ." *Roundy's, Inc. v. N.L.R.B*, 674 F.3d 638, 648 (7th Cir. 2012), quoting Fed. R. Evid. 704, advisory committee's notes (alteration in *Roundy's*). The advisory committee's notes to Rule 704 provide the following helpful illustration: "Thus the question, 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of

5

distribution?' would be allowed." Fed. R. Evid. 704, advisory committee's notes.

So while the law is clear that legal opinions are not permissible, there is nevertheless "a fine line between legal conclusions and factual conclusions," and "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *Amakua Dev. LLC v. Warner*, 2007 WL 2028186, at *10 (N.D. Ill. July 10, 2007), citing *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). "Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Id.* "In other words, an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he many not testify as to whether the legal standard has been satisfied." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-1213 (D.C. Cir. 1997). The line is a hazy one and the question here is what side Anthony's proposed testimony likely comes down upon: impermissible legal opinion or permissible factual conclusion?

In many of the cases excluding expert testimony because it is offering legal opinion, the so-called expert is a lawyer or similar professional. *See, e.g.*, *Good Shepherd*, 323 F.3d at 564; *Roundy's*, 674 F.3d at 645; *RJLCS Enterprises*, 487 F.3d at 498 (two lawyers and an accountant). In *Roundy's*, for instance, the plaintiff grocery store sought to present testimony from a lawyer specializing in property matters regarding Wisconsin's law on easements. *Roundy's*, 674 F.3d at 645. The judge refused to hear the testimony, and instead ruled that the legal analysis should be incorporated into the party's arguments. *Id.* The Seventh Circuit upheld the exclusion of the testimony, reasoning that legal arguments should be presented to the court in counsel's analysis, not expert opinion testimony. *Id*. at 648-49.

6

Kennedy argues that Anthony's proffered testimony differs from the cases excluding experts because he is not a legal expert who will offer opinions that will simply tell the jury what to decide. Kennedy cites a number of cases that she contends permitted experts to give opinions that "touched on or included reference to the elements of the cause of action at issue, which obviously contributed to the ultimate issue of liability" [DE 79 at 25]. But none of the cases that Kennedy cites are applicable to this case, nor do they stand for the proposition that a human resources experts should be permitted to testify about the intricacies of the FMLA and whether a particular employer denied proper FMLA protections to a particular employee, as she proposes to have Anthony do here. Rather, the cases that Kennedy relies on all involve expert testimony on employer practices that have a disparate impact on treatment of minorities, which is an entirely different kettle of fish. *See, e.g., Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 438 n.2 (4th Cir. 2000) (human resources expert permitted to testify generally that the type of subjective criteria-based hiring system at issue in the case "could easily result in discrimination against racial minorities"); *American Federation of State, County, and Mun. Employees, AFL-CIO (AFSCME) v. County*, 96 F.3d 644, 647-48 (2nd Cir. 1996) (labor union presented statistical evidence compiled by a sociologist to show that the defendant employer intentionally discriminated in establishing salary grades); *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) (expert's statistical analysis that did not eliminate all possible legitimate nondiscriminatory factors in a disparate impact discrimination case was admissible because the inadequacies went to the weight, not the admissibility, of the evidence); *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1180 (9th Cir. 2007) (statistician's regression analysis was admissible where he

used regional, as opposed to store-by-store data).[1]  While these cases may support Kennedy's general point that testimony relevant to the key issues in a case is not immediately excludable for touching upon the ultimate legal issues, they do *not* stand for the admission of testimony of the type that Anthony proposes to give.

Perhaps most illustrative of this general problem with Kennedy's argument is *Hayduk v. City of Johnstown*, 2009 WL 3335355 (W.D. Pa. June 4, 2009), which she cites for the proposition that an expert's testimony regarding ultimate legal conclusions is appropriate in an FMLA case [DE 79 at 21].  The *Hayduk* defendants proffered the testimony of a doctor to opine on whether the plaintiff had a "serious medical condition" as defined by the FMLA.  *Id.* at *1.  In that case, the court explicitly found that the doctor was "**NOT** allowed to offer a legal opinion as to whether Mr. Hayduk's [sic] suffered from a serious health condition as defined by the FMLA," and consequently, "portions of Dr. Garrett's expert report that seem to make legal conclusions, *or describe the standards of the FMLA*, must be stricken from the report."  *Id.* (first emphasis in original).  The court then opined that as long as the doctor otherwise testified in a manner consistent with the Federal Rules of Evidence, and that his testimony was generally both relevant and reliable, that he could offer evidence about the severity of the plaintiff's illness.  *Id.* at *2.  In other words, the court specifically excluded the very type of testimony that Kennedy seeks to offer here, but permitted the expert to testify about other appropriate subjects.

Here, Anthony has not proffered testimony or offered opinions to show that based on a thorough analysis, the USPS's institutional policies worked in such a way that organizationally

---

[1] In her brief, Kennedy cited a prior, superseded opinion in the same case, *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1228-29 (9th Cir. 2007) [DE 79 at 25].  The portions of the opinion that are relevant here were unchanged by the subsequent opinion.

stacked the deck against employees like Kennedy, as the experts that were permitted to testify in Kennedy's cited cases did. Rather, he proposes to testify as to what the federal regulations implementing the FMLA are and what they mean; what the USPS policies on FMLA are and what they mean; and whether they were properly followed as to Kennedy. That testimony smacks of impermissible legal opinion, because it is precisely what the jury is being called upon to decide. In other words, the question "Did the USPS violate their FMLA and absence policies and the federal guidelines in the application of FMLA in the manner in which it terminated Ms. Kennedy?" is in the same vein as the question prohibited in the advisory committee's note: "Did T have capacity to make a will?" Therefore, those opinions – and Anthony's proposed testimony regarding the intricacies of the FMLA and whether Kennedy's absences were covered by FMLA – must be excluded.

Moreover, Anthony opines that he finds it "troubling" that there is no USPS policy that authorizes the use of Last Chance Agreements like the one that was used in Kennedy's case, and that the Last Chance Agreement was not reviewed by "anyone in authority" to make sure that it complied with portions of the Age Discrimination in Employment Act [DE 74-1 at 4-5]. Whether the terms of the Last Chance Agreement violated laws is a purely legal issue that should be addressed in counsel's briefing – not at trial by an expert witness. Evidence on that subject will also be excluded.

## II. Dr. Anthony's Testimony Concerning Credibility

The Defendants also move to exclude portions of Dr. Anthony's proposed testimony that they claim is based on speculation [DE 74 at 7]. Specifically, they seek to exclude portions of Dr. Anthony's report relating to his opinions about Defendant Bush's credibility and motivations for answering questions at her deposition, and to exclude portions of his report regarding recent

changes to a Postal Service form [DE 74 at 7-8].

Essentially, because Bush answered a number of questions with "I'm not sure" at her deposition, Dr. Anthony opines that Bush showed an "ignorance" of the case that "indicates" that Bush either did not review the facts of the case prior to her deposition (which he characterizes as "inexcusable in a situation of this magnitude and importance"); was deliberately evasive; was never familiar with the facts of the case; or "has an extremely poor memory to the point that she is not qualified to be post master" [DE 74-1 at 4]. Kennedy claims that Dr. Anthony's conclusions regarding Bush are not credibility assessments and are admissible because Dr. Anthony has a wealth of experience in human resource management and has reviewed Bush's deposition, and thus is qualified to opine as to whether Bush "had the appropriate knowledge, experience, and training in FMLA policies for someone of her stature within a governmental agency" [DE 79 at 29].

Quite simply, ". . . an expert cannot testify as to credibility issues. Rather, credibility questions are within the province of the trier of fact." *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000). An expert witness has no business determining the weight and credibility of witness testimony; that's the jury's job. *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011), citing *United States v. Farrell*, 563 F.3d 364, 377 (8th Cir. 2009); *United States v. Garcia*, 413, F.3d 201, 215 (2nd Cir. 2005).

Kennedy claims that "Anthony never questions the truthfulness or credibility of Tangela Bush at all" [DE 79 at 29]. Even if I accept this flat denial as gospel, which is a stretch given the nature of the testimony, his conclusions regarding Bush's motivations for answering questions in a particular way are still speculative. They are not based on reliable principles or methods. Indeed, the report fails to detail any scientific or experience-based method by which Anthony

10

can arrive at the conclusion as to why Bush answered certain deposition questions in the manner in which she did. These opinions are nothing more than Anthony's subjective belief. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (testimony may not be based on witness' subjective belief). And the court is required to weed out testimony that is simply "subjective belief or unsupported speculation." *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1006 (7th Cir. 1993), quoting *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 613 (7th Cir. 1994). The portions of Anthony's report relating to Bush's credibility or possible reasons for answering deposition questions in a particular matter are not admissible.

In this vein, there is one other area that Kennedy wants Dr. Anthony to testify about. According to Anthony's report, the USPS changed its Form 3971, which employees use to notify the USPS of absences, in May 2012. With no reasoning or evidence whatsoever, Anthony simply concludes that "No doubt this was added to the form because of problems and issues with FMLA that resulted in denial of FMLA rights such as that found in this case" [DE 74-1 at 5]. This opinion is utterly baseless and makes no pretense whatsoever of being founded on reliable principles or methods: there is simply no way that Dr. Anthony is capable of divining why the form was changed. Dr. Anthony fails (understandably) to explain the process that he used to arrive at the conclusion – testimony that would be wholly unhelpful to the trier of fact, for "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999). The conclusory testimony regarding the change in the form will also be excluded.

### III.  Anthony's Testimony Regarding Training and Policies May Be Admissible.

There is one area of testimony that Dr. Anthony may be allowed to testify about and that relates to the USPS's alleged lack of training in FMLA. [DE 74-1 at 4-5]. The USPS challenges

Anthony's testimony as speculative and irrelevant [DE 74 at 7].  They argue that the only issue the factfinder will need to decide is whether Kennedy's absences should have been classed as scheduled or unscheduled – which renders Dr. Anthony's testimony about whether the USPS implemented best practices as far as training goes irrelevant.  USPS also posits that Dr. Anthony's proposed testimony regarding the importance of human resources practices generally is not relevant to the issues for the factfinder to decide, and that his opinions about general management techniques and compliance with internal policies is confusing and prejudicial [*Id.* at 8].

The problem with this argument is that Kennedy is seeking liquidated damages, and the awarding of such damages depends on the employer's good or bad faith.  The FMLA incorporates the remedial provisions of the Fair Labor Standards Act, and provides that liquidated damages are presumed unless the employer demonstrates that it acted reasonably and in good faith.  *Byrne v. Avon Prods., Inc.*, 125 Fed. Appx. 704, 705 (7th Cir. 2004), citing *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998).  Evidence of whether the USPS provided proper training, adhered to policies, and engaged human resource and FMLA personnel will assist the trier of fact in assessing the USPS's actions.  Because the USPS did not respond to Kennedy's argument about the liquidated damages in their briefing, further expert discovery in this particular area is appropriate.

The Court does caution, however, that to be admissible, such testimony still has to pass muster under *Daubert*, and specifically, the testimony has to be based on reliable principles or methods and assist the trier of fact.  At this point, the Court's ruling is simply that at this stage of the litigation, testimony about whether the USPS provided appropriate FMLA training to its employees and whether that training complied with best practices in the human resources

industry could be relevant to the Plaintiff's claim for liquidated damages, if appropriately presented to the jury.[2]

## CONCLUSION

Based on the above reasons, the Defendants' Joint Motion *in Limine* to Exclude the Proposed Expert Testimony of William P. Anthony, Ph.D. [DE 74] is **GRANTED IN PART** and **DENIED IN PART**. The denial of the motion is without prejudice to the Defendants renewing their motion to exclude prior to trial.

**SO ORDERED.**

ENTERED: March 25, 2013

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[2] I will note, however, that some of the opinions Dr. Anthony offers in his report regarding employees' knowledge about the FMLA are conclusory and thus inadmissible. For example, based on his review of the Defendants' depositions, he writes that "Supposedly, a FMLA poster was displayed in the post office, but Bush, the Post Master, could not even tell where it was located! FMLA is an important law and detailed training should be provided to all in addition to a poster" [DE 74-1 at 4]. Quite simply, this opinion is of no assistance to the trier of fact: on cross-examination, Bush can be questioned about her knowledge. The conclusion that Anthony purports to draw from Bush's deposition testimony is simply not the product of a reliable principle or method, and would be inadmissible.